**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:26-CV-00048-GNS-HBB**

**BRIAN COLEMAN**

**JAMIE COLEMAN** **PLAINTIFFS**

**VS.**

**ACUITY, A MUTUAL INSURANCE COMPANY** **DEFENDANT**

# MEMORANDUM OPINION AND ORDER

Plaintiffs Brian and Jamie Coleman move for an order compelling Defendant Acuity, a Mutual Insurance Company, to provide un-redacted documents requested in discovery, DN 17.[1] Acuity has responded in opposition at DN 18 and the Colemans have replied at DN 19.

## Nature of the Case

The facts relevant to the present motion are undisputed. Brian and Jamie Coleman are majority owners of Hometown Air Solutions, LLC. On March 19, 2025, Brian was standing outside a vehicle owned by Hometown and insured by Acuity, which was parked on the curb of a residential street. La'Ebony Taylor was operating a vehicle in which her minor child was a passenger and collided with the Hometown vehicle, which in turn stuck Brian.

[1] The parties have variously referred to the undersigned as both "Magistrate" and "Magistrate Judge." Only the latter title is appropriate. Over thirty years ago, Congress changed the title "United States Magistrate" to "United States Magistrate Judge." Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). This was intended to reflect the elevation of Magistrate Judges to full federal judge status. Just as one would not refer to a district judge as "District" or a bankruptcy judge as "Bankruptcy," "magistrate" refers to jurisdiction, not title. While the parties intended no offense, and none is taken, the correct title is "Magistrate Judge" or simply "Judge."

Taylor asserted bodily injury claims against Hometown on her own behalf and on behalf of her child. Acuity retained defense counsel and eventually negotiated a pre-suit settlement of Taylor's claims. Meanwhile, Brian asserted a bodily injury claim against Taylor and settled his claim with her liability insurance carrier. He now pursues the present action against Acuity for underinsured motorist benefits under the Hometown policy. Jamie joins the action asserting a claim for loss of consortium.

Plaintiffs' Motion to Compel

The Colemans propounded requests for production of documents on Acuity related to Taylor's claim against Hometown:

> Produce the claims file and all accompanying and associated factual documents associated with any claim made by La'Eboni Taylor for property damage, personal injury, or any other item of damages, related to or claimed to be related to the motor vehicle accident that occurred on May 19, 2025, which is the subject of the instant action.[2]

The Colemans also requested the file from counsel retained to defend against the Taylor claim and production of a privilege log if Acuity asserted any claim of privilege.[3] Acuity responded with a blanket objection on grounds of privilege. The parties participated in a discovery conference with the undersigned, and Acuity was directed to supplement its response and provide a privilege log for any responsive documents it continued to withhold on that basis.[4] The Colemans describe Acuity's supplemental production as follows:

> On August 14, Acuity produced a privilege log and 1,274 pages of unredacted document production. Acuity redacted the substance of 372 further pages (nearly a third of the total), with more than 100 of those pages being completely blacked-out from margin to margin. After reviewing the privilege log and the document production, Plaintiffs told Acuity that they would not seek disclosure of 40 particular pages of the claims file because Acuity represented that those pages were communications that involved only Acuity and its UIM and/or coverage-counsel

[2] DN 17, p. 3.
[3] *Id.*
[4] DN 13.

> attorneys (Judd Uhl, Jacob Weis, and Pamela Chestnut). While these communications appeared in the Taylor claims file, Plaintiffs determined that they would nonetheless be appropriately privileged since those attorneys were not retained to represent Hometown Air or the Plaintiffs in any capacity.[5]

The Colemans argue that the Taylor claim documents are relevant because they involve the same participants, the same vehicles and the same circumstances and that, through the production of those documents "the parties would be put on an even playing field, with each having all the information that the other had on hand about the accident."[6]

Turning to Acuity's claim that the documents are privileged, the Colemans argue that, by virtue of their ownership of Hometown, they were also the clients of the counsel Acuity retained to defend Hometown.[7] They have, on behalf of Hometown, directed defense counsel to provide documents related to Taylor's claim.[8] The Colemans note that because they only pursue contractual benefits under the policy of insurance and do not assert a third-party claim for bad faith, any reference to cases such as *Lee v. Medical Protective Co.*, 858 F. Supp. 2d 803 (E.D. Ky. Apr. 30, 2012) addressing issues of privilege in a third-party claim, where a plaintiff seeks to invade the relationship between the Defendant/insured and insurance carrier, are inapplicable.[9] Moreover, the Colemans argue even in a first-party bad faith case, such as *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-R, 2012 U.S. Dist. LEXIS 27914, at *7 (W.D. Ky. Mar. 2, 2012), the court noted "because the insurance file is created on behalf of the insured, the entire claims file is typically discoverable by the plaintiff."[10] The Colemans contend that under Kentucky law they and Hometown were defense counsel's only clients and Acuity holds no power to interpose

---

[5] DN 17, p. 4.
[6] *Id.* at 5.
[7] *Id.* at 10.
[8] *Id.* at 1, 9-10; DN 17-3, p. 1.
[9] *Id.* at 11.
[10] *Id.* at 7.

privilege to prevent them from obtaining information from, or prepared by, their own attorney, citing in support *Brown v. Am. Physicians Assur. Corp.* No. 03-527, 2006 U.S. Dist. LEXIS 107259, at *2-3 (E.D. Ky. Feb. 17, 2006).[11] To the extent that Acuity asserts a claim of attorney work product privilege, the Colemans note that Fed. R. Civ. P. 26(b)(3) only protects documents prepared in anticipation of litigation by or for another party.[12] The Colemans argue that the documents they seek were prepared in anticipation of litigation against Hometown and Acuity is not "another party" to whom the privilege benefit flows.[13]

Acuity argues in response that the Colemans have failed to demonstrate the relevance of the requested information and, moreover, that the documents are privileged. Beginning with relevance, Acuity asserts "[i]n the case at bar, the primary issues to [sic] left be resolved between the parties are Plaintiffs' damages resulting from Ms. Taylor's conduct and causation of those injuries."[14] Acuity contends that the Colemans' only explanation of why the information is relevant is that it will allow them to tell a more colorful and rich story and "Emails exchanged between Acuity and its retained counsel, including attorney work-product prepared in anticipation of litigation, are not pertinent to prove this [negligence] element of Plaintiffs' claim."[15] Acuity concludes "[u]nder Plaintiffs' logic, any litigant may obtain otherwise privileged communications and attorney work-product merely by claiming they provide additional context."[16]

Turning to the issue of privilege, Acuity contends "[d]espite Plaintiffs' partial ownership of Hometown Air Solutions, LLC, the relationship between Acuity and its retained counsel is an independent one of the relationship between Plaintiffs and [defense counsel] Wilson Elser."[17] To

---

[11] DN 17, p. 12.
[12] DN 17, pp. 13-14.
[13] *Id.*
[14] DN 18, p. 3.
[15] *Id.* at 6.
[16] *Id.*
[17] *Id.* at 7.

that end, Acuity cites *Lee* for the proposition that, while the liability insurer and the insured are both clients of defense counsel, the liability insurer is "the primary client" and the primacy extends so far as to make advice given to the insurer on issues where there is a divergence of interests between the insured and insurer privileged as to the insured.[18] 858 F. Supp. 2d at 805-806. Acuity contends that the only interest at risk pre-lawsuit was that of Acuity to Taylor's claims and thus communications with defense counsel only concerned Acuity's exposure. Moreover, given that the Colemans had placed Acuity on notice of a UIM claim, "Acuity's and Plaintiffs' interests were always diverged."[19]

As to Acuity's reliance on work product privilege, Acuity again characterizes itself as the "primary client" of defense counsel and, as such, it is "another party" for whose benefit the documents were produced.[20] Finally, Acuity notes the potential that the Colemans might in the future assert a bad faith claim and in such instances Courts routinely bifurcate discovery; they argue that allowing discovery related to bad faith "makes little sense" since no bad faith claim currently exists.[21]

The Colemans counter Acuity's contention that they have not demonstrated relevance by noting that they are at a disadvantage because they do not yet know what information is in the records.[22] Noting that Acuity has characterized the issues in the case as Taylor's negligence and causation for their injuries, they argue that they "are likely to bear on Taylor's negligence and the lack of Brian's negligence."[23] The Colemans further contest Acuity's argument that production of the records is disproportionate to the needs of the case by pointing out that Acuity has not specified

[18] *Id.*
[19] *Id.* at 8.
[20] *Id.* at 10-11.
[21] *Id.* at 13.
[22] DN 19, pp. 1-2.
[23] *Id.* at 2.

any burden involved in the production and, conversely, has already reviewed the documentation in preparation of its privilege segregation.[24]

As to Acuity's privilege arguments, the Colemans assert they run counter to Kentucky's clear position as stated in KBA Ethics Opinion E-410 that the insured, and not the insurer, is defense counsel's client.[25] Turning to Acuity's suggestion that a bad-faith claim is waiting in the wings, the Colemans state "Plaintiffs have not threatened, asserted, mentioned, whispered, or otherwise intimated that they would file a bad faith claim against Acuity."[26]

## Discussion

While the parties have addressed the issues from various angles, the present motion calls for the resolution of two questions. First, are the records in question subject to privilege, under either the attorney-client or work product privileges? And, if not, are they relevant to the Colemans' UIM claim against Acuity?

### 1. Attorney-Client Privilege

The privilege for communications between an attorney and a client is "the oldest of the privileges for confidential communications known to the common law." *Invesco Institutional, Inc. v. Pass*, 244 F.R.D. 374, 381 (W.D. Ky. 2007) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)). This matter was removed from state court under diversity jurisdiction. 28 U.S.C. § 1332. "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client clams." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Consequently, Kentucky state law governs attorney-client privilege. Ky. R. Evid. 503 addresses attorney-client privilege and provides that a client has a privilege against

---

[24] *Id.* at 2-3.
[25] *Id.* at 4 (quoting without citing Outdoor Venture Corp. v. Philadelphia Indem. Ins. Co., 841 F. App'x 760, 769 (6th Cir. 2020)).
[26] *Id.* at 5.

disclosure of a confidential communication made for the purpose of facilitating legal services to the client or those reasonably necessary for the transmission of the communication. *See* Ky. R. Evid. 503(b)(1) – (5).

Hometown, a limited liability company, was the insured under the contract with Acuity,[27] which hired counsel to protect Hometown's interests in accordance with the contract. *See* KBA E-416, 2001 KY Legal Ethics Ops. LEXIS 3 at *3 ("A purchaser of a liability insurance policy acquires two things of value: an indemnity fund to pay claims covered by the policy, and an insurer-provided legal defense against the claims."). A business entity, such as an LLC, may be a "client" for purposes of the attorney-client privilege. Ky. R. Evid. 503(1). In this regard, it is worth noting that Hometown was the named insured under the Acuity policy, which raises the question of whether the Colemans, as majority owners of Hometown, also have standing as "clients" of Hometown's defense counsel for purposes of attorney-client privilege. Certainly, they would be considered "representatives" of Hometown so that privilege would not be waived insofar as their communications with Hometown's defense counsel were concerned under Ky. R. Evid. 503. But are they also "clients" for purposes of requesting documents related to Hometown's defense against the Taylor claim? Fortunately, the Court need not grapple with this question. Ky. R. Evid. 503(c) provides that privilege may be claimed by the client or on the client's behalf by a "representative of a corporation, association, or other organization. . . ." Ky. R. Evid. 509 provides that a client may consent to disclosure of otherwise privileged information. An LLC can act only through its members or manager, and the Colemans have, on Hometown's behalf and as its representatives, consented to the release of any privileged documents.[28]

---

[27] *See* DN 1-1, at p. 15.
[28] *See* DN 17-3, at p. 1 (Letter from Plaintiffs' counsel to Defendant's counsel indicating "Hometown Air Solutions, LLC, consents to the release of all information to Brian and Jamie Coleman. As principals of the business, they have a right to review and receive the information.").

Acuity casts itself as defense counsel's client, and therefore the beneficiary of the attorney-client of privilege, citing *Lee* for the proposition that "while a liability insurer and insured are 'both [] the attorneys' clients,' the liability insurer 'is the primary client.'"[29] 858 F. Supp. at 805-806. *Lee*, a third-party bad faith case, came to this conclusion by interpreting *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979) for the conclusion "that statements, given by an insured to an adjuster before the company has hired an attorney, but to be given to the attorney who will ultimately be retained, partake of the insurer's attorney-client privilege. The implication is that the insurance company is the primary client." *Lee* at 805. With respect, the undersigned disagrees with this conclusion. Neither *Asbury*, the decisions of Kentucky's state courts, nor Kentucky legal ethical opinions support this theory of client hierarchy.

First, *Asbury* does not stand for the proposition that an insurance carrier is the client of the attorney retained to defend its insured. Rather, the court held the insurance carrier is an agent of the insured for purposes of communications from the insured passed along to defense counsel. "The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *Asbury* at p. 217. Quoting 81 Am.Jur.2d, Witnesses, Sec. 193, *Asbury* observed "a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him and which is covered by the policy, is a privileged communication, as being between attorney and client . . . ." *Asbury* at p. 217. This comports with Ky. R. Evid. 503(b) which extends confidentiality to communications

[29] DN 18, p. 7.

between representatives of an attorney or a client. Thus, applying Rule 503 to *Asbury*, the insurance carrier is the representative of the insured in communications with defense counsel. The carrier is not defense counsel's the client. Nothing in *Asbury* implies there is a primacy of client status favoring the insurance carrier. To the contrary, the "subordination of interests of the insured to the insurer is against the weight of authority in cases where an insurance company retains an attorney to represent the insured . . . ." *Kuhlman Elec. Corp. v. Chappell*, Ky. App. Unpub. LEXIS 1185, *15 (Ky. App. Dec. 2, 2005). This viewpoint is echoed in *Settles v. Owners Ins. Co.*:

> Insurance-related litigation often involves a tripartite relationship between an insured, and insurer, and counsel hired by the latter to represent the interests of the former. In such a relationship, "the interest of the insured and the insurer frequently differ." *Kuhlman Electric Corp. v. Chappell*, 2005 Ky. App. Unpub. LEXIS 1185, 2005 WL 3243498 (Ky. App. 2005), aff'd, *Chappell v. Kuhlman Electric Corp.*, 304 S.W.3d 8 (Ky. 2009). Therefore, our Courts have, and out of necessity, established that, in the context of insurance litigation, "no man can serve two masters[.]" *American Ins. Ass'n v. Kentucky Bar Ass'n*, 917 S.W.2d 568, 571 (Ky. 1996), citing *Kentucky Fair Bd. v. Fowler*, 310 Ky. 607, 221 S.W.2d 435 (Ky. 1949). "[T]he defense attorney's primary duty of loyalty lies with the insured, and not the insurer." *Kuhlman*, 2005 Ky. App. Unpub. LEXIS 1185, [WL] at 18.

*Settles v. Owners Ins. Co.*, 2015 Ky. App. Unpub. LEXIS 623, *10 (Ky. App. Aug. 28, 2015). As the Eastern District has noted:

> When an insured individual is sued by a third party, a unique dynamic is created. While the insurance company generally selects and hires an attorney to defend its insured against the claims, the attorney is charged with representing the insured, not the insurance company. In fact, a host of Kentucky Bar Association Ethics Opinions clearly state that for purposes of ethical obligations, an attorney's only responsibility is to the insured, not the insurer. *See e.g.* Kentucky Bar Association, Ethics Opinion, KBA E-331 (1988); Kentucky Bar Association, Ethics Opinion KBA E-340 (1990). . . . [T]hese opinions deal with the ethical obligations of the attorney representing the insured, not the question as to whether these obligations mean that the two parties are "joint clients" for purposes of an attorney-client privilege exception. Nevertheless, the logic behind them is the same.

*Brown v. Am. Physicians Assur. Corp.*, No. 03-527, 2006 U.S. Dist. LEXIS 107259, *5-6 (E.D. Ky. Feb. 17, 2006). The court went on to observe:

> When an insurer retains counsel for an insured under Kentucky law, that counsel is then obligated to act in the insured's best interests. Absent an agreement between the insured and the insurer, the insurance company is no longer part of the counseling process. Counsel represents the interests of the insured and the insured only. Thus the parties are not "joint clients" with the same representation, but rather one party has counsel and the insurer only has whatever relationship that may be created by agreement between the insurer its insured.

*Id.* at *6; *see also Moore v. Cincinnati Cas. Co.*, No. 5:21-CV-107-BJB, 2022 U.S. Dist. LEXIS 148044, *10 (W.D. Ky. Aug. 18, 2022) (Retained counsel operating under a duty to defend represents the insured, not the insurer.). Kentucky ethics opinions make this crystal clear.

> All attorneys who are paid by Insurers to defend Insureds must scrupulously monitor the tripartite relationship to ensure that the attorney's independence of judgment is not impaired, that the attorney's representation of the Insured is not impaired, and that client confidences are protected. In so doing, the attorney must be ever mindful that with regard to this tripartite relationship the attorney's client is the Insured and not the Insurer.

1999 KY Legal Ethics Ops. LEXIS 1, *7-8.

> In Kentucky . . . when an insurance company engages a lawyer to defend an insured against a claim, the insured -- not the insurer -- is the lawyer's client.
>
> . . . .
>
> Kentucky's one-client view differs from the position taken in some states, and expressed by some commentators, that the tripartite relationship (or "eternal triangle") of insured, insurer, and defense counsel actually entails two clients: the insured and the insurer.
>
> . . . .
>
> Under the one-client view, the insurer is a third-party payer, not a client.

2001 KY Legal Ethics Ops. LEXIS 3, *10-13; *see also* 2020 KY Legal Ethics Ops. LEXIS 3 at *4 ("This 'one client, and the insured is the one' rule for counsel retained to defend an insured is established firmly at this point in time.").

Acuity also argues that retained defense counsel was actually working for it, because:

> the claim asserted by Ms. Taylor was pre-lawsuit. The only interests at risk by Mr. [sic] Taylor's claim was Acuity's. In other words, Wilson Elser's emails to Acuity concerned Acuity's own exposure to Ms. Taylor's claim, not excess exposure due to Plaintiffs or Hometown Air Solutions, LLC. Furthermore, Plaintiffs' and Acuity's interests were not necessarily coextensive merely because Acuity simultaneously provided a defense to Hometown Air Solutions, LLC against Ms. Taylor's third-party claim. During the same period in which Acuity administered Ms. Taylor's bodily injury claim, Mr. Coleman was pursuing a separate first-party UIM claim against Acuity arising from the collision—both just two months after the occurrence. *See* Dkt. # 17, PageID # 60. Plaintiffs acknowledge that Acuity was placed on notice of that UIM claim and consented to Mr. Coleman's settlement with Ms. Taylor's liability carrier. *Id*. Thus, Acuity's and Plaintiffs' interests were always diverged.[30]

Beginning with Acuity's contention that defense counsel's communications regarding the Taylor claim only concerned Acuity's "exposure to Ms. Taylor's claim, not excess exposure due to Plaintiffs or Hometown," this argument ignores that Taylor had no pre-judgment right of direct action against Acuity, and Acuity's only "exposure" was a contractual obligation to indemnify Hometown. "Under Kentucky law, an injured person has no direct right of action against an insurance company until after a judgment has first been obtained against the insured." *Owens v. Ohio Cas. Ins. Co.*, No. 4:09-CV-00093-JHM, 2010 U.S. Dist. LEXIS 166340, *4 (W.D. Ky. Jan. 21, 2010). Acuity does not contend that, at the time it settled Taylor's claim pre-suit, retained counsel was merely acting in an adjustor capacity. "The adjustor owes no independent loyalty to the insured apart from that owed by the insurer. The attorney's loyalty to his insured client is paramount." *Cincinnati Ins. Co. v. Hofmeister*, 2008 Ky. App. LEXIS 313, *56 (Ky. App. Oct. 17, 2008). Further, Acuity does not argue that it retained counsel in question for the sole purpose of giving it advice regarding the Taylor claim and not as defense counsel for Hometown. To the contrary, Acuity has stated "[a]fter the collision, Ms. Taylor submitted a bodily injury claim against

[30] DN 18, p. 8.

Hometown Air Solutions LLC, partially owned by Plaintiffs, and insured by Acuity. As its liability insurer, Acuity hired attorneys Lynsie Rust and Jeremy Nelson of Wilson Elser, LLP (or "retained counsel") to defend against Ms. Taylor's claim."[31] Counsel was hired to defend Hometown as the alleged tortfeasor. Taylor had no claim against Acuity against which it needed to defend itself.

Turning next to Acuity's observation that the Colemans' UIM claim creates a divergence of interests between them, Hometown was represented by different counsel in the Taylor claim than counsel defending against the Colemans' present UIM claim. Indeed, for the same attorney to defend a liability claim against an insured and then provide advice to the carrier regarding a related UIM claim would be a clear conflict of interest. The Colemans have confirmed that they do not seek any communications between Acuity and counsel defending this UIM case even if they are included in the Taylor claim file.[32] In sum, the divergence of interests between the Colemans and Acuity only relates to their UIM claim in isolation. It does not bear upon the issue of privilege regarding the Taylor claim against Hometown.

2. <u>Attorney Work Product</u>

Federal law governs the determination of whether the Colemans are prohibited from obtaining documents prepared by counsel retained to defend Hometown against the Taylor claim under the Attorney Work Product doctrine. *See In re Powerhouse Licensing, LLC*, 441 F.3d 472. Fed. R. Civ. P. 26(b)(3) protects and separates work product into two categories: "ordinary" work product and "opinion" work product. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). Ordinary work product is: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for another party or its representative, including the other party's attorney, consultant, surety, indemnitor, insurer, or agent. Fed. R. Civ. P. 26(b)(3)(A). Opinion

[31] DN 18, at p. 1.
[32] *See* DN 17, at p. 4.

work-product is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at (b)(3)(B). Here there is no question that the Colemans seek documents prepared in anticipation of litigation. The question is whether they were prepared "by another party." Acuity argues that it was the "other party" for whose benefit the documents were prepared. It contends the documents are "[c]onfidential reports prepared by Wilson Elser attorneys . . . addressed directly to Acuity, and no one else, for the purpose of evaluating the bodily injury claim asserted by Ms. Taylor"[33] and that "these confidential reports are prepared exclusively for Acuity's benefit by its retained counsel."[34] Acuity again relies upon the characterization of itself as the "primary client," a characterization the undersigned has already rejected.

Fed. R. Civ. P. 26(b)(3) permits "an attorney to prepare a case for litigation free of 'the prying eyes and ears of opponents.'" *K.W. Muth Co. v. Bing-Lear Mfg. Group*, 219 F.R.D. 554, 565 (E.D. Mich. 2003) (*quoting Fleet Nat'l Bank v. Tonneson & Co.,* 150 F.R.D. 10 (D. Ma. 1993)). As previously discussed, retained defense counsel did not work for Acuity. Counsel worked for Hometown and was paid by Acuity in accordance with the contract of insurance. *See Settles*, 2015 Ky. App. Unpub. LEXIS 623 at *10. Hometown and Acuity were not opponents for purposes of the Taylor claim.

Even in a first-party bad faith case, claims files are discoverable by the insured because the file is prepared for the insured's benefit. "For discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff." *Wright v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-CV-00563-BJB-CHL, 2022 U.S. Dist. LEXIS 116701, *11 (W.D. Ky. July 1, 2022) (quoting *Shaheen v. Progressive Cas. Ins. Co.*,

---

[33] DN 18, at p. 10.
[34] *Id.*

No. 5:08-CV-00034-R, 2012 U.S. Dist. LEXIS 27914, *7 (W.D. Ky. Mar. 2, 2012)). Work product belongs to the client, and an attorney may not withhold work product from the client. *Kline v. Gulf Ins. Co.*, No. 1:10-CV-213, 2001 U.S. Dist. LEXIS 20603, *6 (W.D. Mich. Nov. 26, 2001).

Moreover, if Kentucky law allowed retained defense counsel to jointly represent the insured and insurer (which it does not), neither would be "another party" insofar as defense counsel's work product is concerned. *See, e.g. Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (Documents that were created in joint clients' common interest do not constitute work product within the meaning of Fed. R. Civ. P. 26(b)(3) because those documents were not prepared "by or for another party or its representative.").

3. Relevance

The scope of discovery includes any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information must be relevant to be discoverable. Fed. R. Civ. P. 26(b)(1). The Supreme Court has interpreted relevance broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). "When an objection to relevance is raised or the relevance of the information sought is not apparent, the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the action." *First Mercury Ins. Co. v. Babcock Enters., Inc.*, No. 3:21- CV-00672-GNS-CHL, 2024 U.S. Dist. LEXIS 152516, *24-25 (W.D. Ky. Aug. 26, 2024). When the discovery material sought appears to be relevant, the party who is resisting production bears the burden of establishing

that the material is not relevant, or that it is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Invesco*, 244 F.R.D. at 380. This party bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury. *Id.*

The Colemans' Complaint alleges that Brian was injured due to Taylor's negligence and his damages exceed Taylor's policy limits, thus entitling them to recovery under Acuity's UIM coverage.[35] Acuity denied the allegations in the Complaint, and specifically plead that the Colemans' injuries were due to Brian's negligence.[36] Thus, issues relevant to the Colemans' claims and Acuity's defense touch upon the respective negligence of Brian and Taylor and the extent of the Colemans' injuries. Acuity agrees: "[i]n the case at bar, the primary issues to [sic] left [to] be resolved between the parties are Plaintiffs' damages resulting from Ms. Taylor's conduct and causation of those injuries."[37] The proponent of a motion to compel discovery bears the initial burden of demonstrating relevance, however considering the spirit and purpose of the Civil Rules that threshold is relatively low. *Hadfield v. Newpage Corp.*, No. 5:14-CV-00027-TBR-LLK, 2016 U.S. Dist. LEXIS 12744, *9 (W.D. Ky. Feb. 3, 2016). Here, it strikes the undersigned that records related to the defense of Taylor's claim against Hometown – the same accident from which the Colemans' claims arise – are inherently relevant to the issue of liability and could also reflect upon Brian's injury claim.

In opposing the relevance of records related to Hometown's defense against the Taylor claim, Acuity presents two arguments. First, that the Colemans have not satisfied their burden of establishing the information is relevant.[38] The undersigned concludes that relevance is readily

[35] DN 1-1, pp. 4-5.
[36] DN 6, p. 5.
[37] DN 18, at p. 3.
[38] DN 18, pp. 3-6.

apparent and the Colemans have crossed the low bar for satisfaction of their burden. The burden shifts to Acuity to establish that the information is not relevant. Aside from its arguments that the information is privileged, Acuity offers no persuasive explanation as to why the records are not otherwise relevant.

Second, Acuity notes Fed. R. 26(b)(1)'s requirement that, even if relevant, discovery must also be proportional to the needs of the case.[39] Other than generally invoking the rule, Acuity makes no effort to address the elements which guide the determination of proportionality, which include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In sum, proportionality is guided by the burden discovery imposes on the responding party. Here, Acuity undercuts its own argument, noting "Acuity has already produced the vast majority of its claims file, subject to a privilege log."[40] Acuity has already done the work necessary to identify and produce the remaining information – it need only remove the redactions.

WHEREFORE, Plaintiffs' motion to compel, DN 17, is **GRANTED**.

H. Brent Brennenstuhl

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

November 4, 2026

Copies: Counsel

---

[39] *Id*. at 3, 6.
[40] *Id*. at 2.